# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

---

DERRICK WILSON,

                    **Plaintiff,**

   v.                                         Case No. 18-cv-1027

LT PETTIS, CO MILLER,
CO IRELAND, SGT LOLLIS,
CO TYRA, CO MEYER,
CO SIVILOTTI, and
JOHN DOE,

                      **Defendants.**

---

## SCREENING ORDER

---

Plaintiff Derrick Wilson, a Wisconsin state prisoner who is representing himself, filed a complaint alleging that his civil rights were violated while he was housed at the Milwaukee Secure Detention Facility (MSDF). The court has jurisdiction to resolve Wilson's motion to proceed without prepayment of the filing fee and to screen the complaint based on the Wisconsin Department of Justice's limited consent to the exercise of magistrate judge jurisdiction as set forth in the Memorandum of Understanding between the Wisconsin Department of Justice and this court.

**I. Motions for Leave to Proceed without Prepayment of the Filing Fee (ECF Nos. 6, 9)**

The Prison Litigation Reform Act applies to this case because Wilson was incarcerated when he filed his complaint. 28 U.S.C. § 1915. That law allows a court to give an incarcerated plaintiff the opportunity to proceed with his case without prepaying the civil case filing fee as long as he meets certain conditions. One of those conditions is that the plaintiff pay an initial partial filing fee. 28 U.S.C. § 1915(b). Once the plaintiff pays the initial partial filing fee, the court may allow the plaintiff to pay the balance of the $350 filing fee over time through deductions from his prisoner account. *Id*.

On July 18, 2018, the court ordered Wilson to pay an initial partial filing fee of $8.19. (ECF No. 10.) Wilson paid that fee on August 6, 2018. Therefore, the court will grant Wilson's motions for leave to proceed without prepayment of the filing fee. (ECF Nos. 6, 9.) He must pay the remainder of the filing fee over time in the manner explained at the end of this order.

**II. Screening Wilson's Complaint**

*A. Federal Screening Standard*

The law requires the court to screen complaints brought by prisoners seeking relief against a governmental entity or officer or employee of a governmental entity. 28 U.S.C. § 1915A(a). The court must dismiss a complaint if the plaintiff raises claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be

granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b).

To state a claim, a complaint must contain sufficient factual matter, accepted as true, "that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows a court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. (citing *Twombly*, 550 U.S. at 556).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege that 1) he was deprived of a right secured by the Constitution or laws of the United States, and 2) the defendant was acting under color of state law. *Buchanan-Moore v. County of Milwaukee*, 570 F.3d 824, 827 (7th Cir. 2009) (citing *Kramer v. Village of North Fond du Lac*, 384 F.3d 856, 861 (7th Cir. 2004)); *see also Gomez v. Toledo*, 446 U.S. 635, 640 (1980). The court gives a *pro se* plaintiff's allegations, "however inartfully pleaded," a liberal construction. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)).

B. Wilson's Allegations

Wilson alleges that on January 4, 2015, during count time at MSDF, defendant Lt. Pettis arrived on his unit in response to a disruption. (ECF No. 1 at 1.) Wilson explains that the whole unit was being loud, but Pettis singled him out and told Wilson "he was

3

acting like a dumb ass nigga" and was going to the hole. (*Id*.) Wilson told her that he was not going anywhere because she was not being fair. (*Id*.) Wilson states that he then locked himself in his cell while staff went to get the cell extraction team. (*Id*.) Once the cell extraction team came to his cell, Wilson put his hands outside the trapdoor and came out of his cell without incident. (*Id*.) Pettis allegedly told Wilson, "You'll regret this dumb ass." (*Id*.)

Wilson explains that he was cuffed and shackled. (ECF No. 1 at 1.) He kept telling the officers, "This don't make any s[e]nse," and the officers told him to stop talking. (*Id*.) Wilson alleges that "out of nowhere" defendants CO Miller and CO Ireland "rushed Wilson into the wall face first . . . ." (*Id*. at 2.) He states that they again "slammed" him into the hallway wall, all while twisting his wrists, which were cuffed behind his back. (*Id*.) Wilson states defendant officers Lollis, Tyra, and Sivilotti also "rushed" Wilson and began punching him in the face. (*Id*.) Wilson states that, after a while, the officers dragged him backwards by his neck to the elevator. (*Id*.) Wilson explains that it was hard for him to breathe. (*Id*.)

Wilson states that, once on the segregation unit, he was "tethered to the cell and his clothes were cut off by the scissors." (ECF No. 1 at 2.) Wilson does not identify which officers were involved. Wilson asserts that Pettis ordered defendant CO John Doe "to spread his cheeks and see if Wilson was hiding anything and the John Doe officer

4

did as he was told and stuck his finger in Wilson's butt." (*Id*.) Wilson states that he resisted, so someone (it is not clear who) rammed his face into the metal wall. (*Id*.)

Wilson alleges that he was not resisting, but Pettis allegedly told the officers he was and instructed them to "get Wilson to the wall." (ECF No. 1 at 2.) Wilson states that the officer (it is not clear which one) twisted Wilson's wrist even more. (*Id*.) Wilson states that he lost feeling his thumb. (*Id*.)

According to Wilson, officers placed him in control status without clothes for twenty-four hours. (ECF No. 1 at 2.) He alleges that he asked to see a nurse, but the request was initially denied. (*Id*.) Wilson states that he "was finally" able to see a nurse (who is not a defendant), who gave him an ice pack and some pain medication for his swollen face. (*Id*.)

Wilson asserts that the next day he was moved from main segregation to the step unit. (ECF No. 1 at 2.) (Wilson does not explain what "the step unit" is.) He explains that he did not have a conduct report hearing, and he believes it is improper for inmates to be housed in main segregation before having such a hearing. (*Id*.)

Wilson states that, while he was in segregation, Miller came to his cell and threatened him. (ECF No. 1 at 2.) Miller allegedly told Wilson that, if he did not come to the door, he would get him sent back to main segregation. (*Id*.) He also told Wilson that he had guns and could do something to Wilson. (*Id.*)

*C. Analysis*

The court will allow Wilson to proceed on an excessive force claim against Miller, Ireland, Lollis, Tyra, and Sivilotti based on his allegations that they slammed his head into walls, punched him in the face, and/or twisted his wrists. *See Rice ex rel. Rice v. Correctional Medical Services*, 675 F.3d 650, 667 (7th Cir. 2012) ("The use of force qualifies as excessive for the purposes of Eighth Amendment and due process jurisprudence when it entails the 'unnecessary and wanton infliction of pain.'") (citations omitted).

The court will also allow Wilson to proceed on an Eighth Amendment claim against John Doe based on Wilson's allegations that his search of Wilson was performed in a manner that may have violated the Constitution. *See Mays v. Springborn*, 575 F.3d 643, 649-50 (7th Cir. 2009). Construing Wilson's allegations broadly (which the court must at this stage), the court concludes that John Doe may have conducted the search "in a harassing manner [that was] intended to humiliate and cause psychological pain." *Id*. at 650.

After the named defendants respond to Wilson's complaint and after the court enters a scheduling order setting deadlines for discovery and the filing of dispositive motions, Wilson may use discovery to identify the real name of the John Doe defendant. Once he identifies John Doe's real name, he should file a motion asking the court to substitute the real name for the John Doe placeholder.

The court will not allow Wilson to proceed on a claim against CO Meyer. Although Wilson names Meyer in the caption of his complaint, he includes no allegations describing what Meyer did or did not do to violate his rights. Accordingly, the court will dismiss Meyer as a defendant.

The court also will not allow Wilson to proceed against Miller based on his allegations that Miller threatened to have him sent back to segregation and told him that he had guns. "[H]arassment, while regrettable, is not what comes to mind when one thinks of 'cruel and unusual' punishment." *Dobbey v. Illinois Dept. of Corrections*, 574 F.3d 443, 446 (7th Cir. 2009) (holding that allegations of a corrections officer hanging a noose from the ceiling within view of Black inmates was insufficient to state a claim).

Finally, the court will not allow Wilson to proceed on a due process claim based on his allegations that he was initially placed in segregation for twenty-four hours without a conduct report hearing. Wilson is largely silent as to the conditions in segregation and the extremely short period of time he was there before he was moved to another unit fails to trigger due-process protection. *See Earl v. Racine County Jail*, 718 F.3d 689, 691 (7th Cir. 2013).

**ORDER**

The court **GRANTS** Wilson's motions for leave to proceed without prepayment of the filing fee (ECF Nos. 6, 9).

The court further **ORDERS** that defendant Meyer is **DISMISSED**.

Under an informal service agreement between the Wisconsin Department of Justice and this court, the court **ORDERS** the clerk's office to electronically send copies of Wilson's complaint and this order to the Wisconsin Department of Justice for service on defendants Pettis, Miller, Ireland, Lollis, Tyra, and Sivilotti.

Under an informal service agreement between the Wisconsin Department of Justice and this court, the court **ORDERS** defendants Pettis, Miller, Ireland, Lollis, Tyra and Sivilotti to file a pleading responsive to the complaint within sixty days of receiving electronic notice of this order.

The court **ORDERS** that the agency having custody of Wilson shall collect from his institution trust account the $341.81 balance of the filing fee by collecting monthly payments from Wilson's prison trust account in an amount equal to 20% of the preceding month's income credited to Wilson's trust account and forwarding payments to the clerk of court each time the amount in the account exceeds $10 in accordance with 28 U.S.C. §1915(b)(2). The agency shall clearly identify the payments by the case name and number. If Wilson transfers to another county, state, or federal institution, the transferring institution shall forward a copy of this order, along with Wilson's remaining balance, to the receiving institution.

The court will send a copy of this order to the officer in charge of the agency where Wilson is confined.

The court **ORDERS** that the parties may not begin discovery until after the court enters a scheduling order setting deadlines for discovery and dispositive motions.

The court **ORDERS** that, under the Prisoner E-Filing Program, Wilson shall submit all correspondence and case filings to institution staff, who will scan and e-mail documents to the court.[1] If Wilson is no longer incarcerated at a Prisoner E-Filing institution, he will be required to submit all correspondence and legal material to:

> Office of the Clerk
> United States District Court
> Eastern District of Wisconsin
> 362 United States Courthouse
> 517 E. Wisconsin Avenue
> Milwaukee, Wisconsin 53202

PLEASE DO NOT MAIL ANYTHING DIRECTLY TO THE COURT'S CHAMBERS. It will only delay the processing of the matter.

The court advises Wilson that, if he fails to file documents or take other required actions by the deadlines the court sets, the court may dismiss the case based on his failure to prosecute. The parties must notify the clerk of court of any change of address. Failure to do so could result in orders or other information not being timely delivered, thus affecting the legal rights of the parties.

---

[1] The Prisoner E-Filing Program is mandatory for all inmates of Dodge Correctional Institution, Green Bay Correctional Institution, Waupun Correctional Institution, Wisconsin Secure Program Facility, Columbia Correctional Institution, and Oshkosh Correctional Institution.

Dated at Milwaukee, Wisconsin this 21st day of August, 2018.

_William E. Duffin_
WILLIAM E. DUFFIN
U.S. Magistrate Judge