UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

DERRICK WILSON,

        Plaintiff,

  v.                                      Case No. 18-C-1027

WHYKETHA PETTIS,
JOHN L. MILLER,
JEROME IRELAND,
RONALD LOLLIS,
DAVID TYRA,
DANIEL SIVILOTTI, and
CO MEYER,

        Defendants.

---

**DECISION AND ORDER**

---

Plaintiff Derrick Wilson, who is currently serving a state prison sentence at Wisconsin Secure Program Facility, filed this action pursuant to 42 U.S.C. § 1983, alleging that his civil rights were violated. In particular, Wilson asserts that defendants Whyketha Pettis, John L. Miller, Jerome Ireland, Ronald Lollis, David Tyra, and Daniel Sivilotti used excessive force against him. He also alleges that defendant Meyer performed a strip search in a manner that violated the Constitution. On February 21, 2019, Defendants Pettis, Miller, Sivilotti, Lollis, Ireland, and Tyra moved for partial summary judgment to dismiss Wilson's excessive force claims. For the following reasons, the motion will be granted.

**BACKGROUND**

At all times relevant, Wilson was housed at Milwaukee Secure Detention Facility. Defs.' Proposed Findings of Fact ¶ 1, Dkt. No. 24. On January 4, 2015, during an evening count of

inmates, Wilson called Lt. Pettis a "bitch." In response to being told that he would be transferred to the segregation unit, Wilson locked himself in his cell and told staff to "bring the team," or assemble a cell-extraction team to forcibly remove him from his cell. Lt. Pettis assembled a cell-extraction team consisting of Miller, Lollis, Ireland, and Tyra. She also contacted medical staff to determine whether Wilson had any contraindication to incapacitating agents. Medical staff advised that Wilson had asthma and thus a contraindication to pepper spray. Pettis then contacted the security director, who approved the use of a taser, if necessary.

Although Wilson allowed staff to place him in wrist and ankle restraints when the cell extraction team arrived at his cell, he continued to be disruptive. Other inmates on the unit fed off of his verbal resistance. As the officers escorted Wilson through a dayroom towards the segregation unit, Wilson continued to engage in disruptive behavior. Wilson also called Lollis a "bitch." When Lollis instructed Wilson to be quiet, Wilson began yelling aggressively while other officers walked him toward Lollis. Lollis and Ireland then directed Wilson against the nearest wall. Within seconds of securing Wilson to the wall, several inmates began yelling at the officers. The officers then escorted Wilson out of the dayroom into a hallway and re-secured him to another wall. Lollis secured Wilson's head in a compliance hold, and the officers walked Wilson backward, with Miller and Ireland holding his arms, to a cell in the segregation unit. Meyer conducted a staff-assisted strip search, and the officers placed Wilson in his cell.

Wilson claims that the video of the incident is inconclusive as to whether he was tensing up his body or trying to pull away from the escort hold, but does not dispute that he was disruptive, threatened the staff, and yelled obscenities during the escort. He claims that the officers slammed his face into the wall and twisted his arm behind his back. Wilson asserts that he received a swollen

2

face with knots and loss of sensation in his thumbs, wrist, and ankles due to the force used by the defendants.

## LEGAL STANDARD

Summary judgment is appropriate when the movant shows there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). In deciding a motion for summary judgment, the court must view the evidence and make all reasonable inferences that favor them in the light most favorable to the non-moving party. *Johnson v. Advocate Health & Hosps. Corp.*, 892 F.3d 887, 893 (7th Cir. 2018) (citing *Parker v. Four Seasons Hotels, Ltd.*, 845 F.3d 807, 812 (7th Cir. 2017)). The party opposing the motion for summary judgment must "submit evidentiary materials that set forth specific facts showing that there is a genuine issue for trial." *Siegel v. Shell Oil Co.*, 612 F.3d 932, 937 (7th Cir. 2010) (citations omitted). "[A] factual dispute is 'genuine' for summary judgment purposes only when there is 'sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party.'" *Outlaw v. Newkirk*, 259 F.3d 833, 837 (7th Cir. 2001) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986)). "[A] 'metaphysical doubt' regarding the existence of a genuine fact issue is not enough to stave off summary judgment, and 'the nonmovant fails to demonstrate a genuine issue for trial where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party.'" *Id.* (quoting *Logan v. Commercial Union Ins. Co.*, 96 F.3d 971, 978 (7th Cir. 1996)).

"When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380 (2007). Where a video recording exists, and "[t]here are no allegations or indications that this

3

videotape was doctored or altered in any way, nor any contention that what it depicts differs from what actually happened," a court must view "the facts in the light depicted by the videotape." *Id.* at 378–81. Summary judgment is properly entered against a party "who fails to make a showing to establish the existence of an element essential to the party's case, and on which that party will bear the burden of proof at trial." *Austin v. Walgreen Co.*, 885 F.3d 1085, 1087–88 (7th Cir. 2018) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)).

## ANALYSIS

"The Eighth Amendment's Cruel and Unusual Punishments Clause prohibits the 'unnecessary and wanton infliction of pain' on prisoners." *Outlaw*, 259 F.3d at 837 (quoting *Hudson v. McMillian*, 503 U.S. 1, 5 (1992)). Not every "malevolent touch by a prison guard" violates the Eighth Amendment. *Hudson*, 503 U.S. at 9. "The use of *de minimis* force, so long as it 'is not a sort repugnant to the conscience of mankind,' is not of Eighth Amendment concern." *Lewis v. Downey*, 581 F.3d 467, 475 (7th Cir. 2009) (quoting *Hudson*, 503 U.S. at 9–10). When the force is more than *de minimis*, however, the primary inquiry is "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *See Hudson*, 503 U.S. at 6. In answering this question, the court must consider the following factors: (1) the need for the application of force; (2) the relationship between the need and the amount of force that was used; (3) the extent of the injury inflicted; (4) the extent of the threat to the safety of staff and inmates, as reasonably perceived by the officials responsible on the basis of the facts known to them; and (5) any efforts made to temper the severity of a forceful response. *Whitely v. Albers*, 475 U.S. 312, 321 (1986). The undisputed facts, viewed in a light most favorable to Wilson, demonstrate that: Wilson was disruptive in his cell and demanded that a cell extraction

4

team assemble to escort him to the segregation unit; the defendants planned to use force to extract Wilson from his cell and bring him to the segregation unit by way of a hands-on escort; Wilson remained disruptive, aggressive, and non-compliant during the escort; and the defendants directed him to a wall in the dayroom using a trained stabilization technique in an attempt to gain compliance, escorted him out of the dayroom and secured him to a second wall, and escorted him to the segregation unit.

As an initial matter, the court finds that the defendants' actions here constitute a *de minimis* use of force. An excessive force claim "ordinarily cannot be predicated upon a de minimis use of physical force." *DeWalt v. Carter*, 224 F.3d 607, 620 (7th Cir. 2000) (citing *Hudson*, 503 U.S. at 9–10). "Not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers" violates a prisoner's constitutional rights. *Hudson*, 503 U.S. at 9 (citation omitted). While the lack of injury is not determinative of whether the force used by the officers is *de minimis*, it may reflect on the amount of force used. *See Wilkins v. Gaddy*, 559 U.S. 34, 38 (2010) ("An inmate who complains of a 'push or shove' that causes no discernible injury almost certainly fails to state a valid excessive force claim."). While no bright line rule as to whether the force used is *de minimis* exists, the Seventh Circuit has found that a correctional officer's act of shoving an inmate against a door after the inmate told the officer that his actions were "unprofessional" and bruising him were *de minimis*. *DeWalt*, 224 F.3d at 610–11.

Like the officer in *DeWalt*, the officers in this case responded to Wilson's non-compliant behavior by pressing Wilson up to the wall as they instructed Wilson to comply with their directives. Although the officers directed Wilson to the wall twice in order to gain compliance, their actions were part of the same series of conduct. Wilson's resulting injuries were also minimal: his

5

face was swollen and his thumb, wrist, and arm went numb. *Compare DeWalt*, 224 F.3d at 620 (finding bruising to be a minimal injury and evidence of a *de minimis* use of force), *with Hudson*, 503 U.S. at 10 (finding that the blows delivered by one officer who punched the inmate in the mouth, eyes, chest, and stomach while another officer held the inmate and kicked and punched him from behind were not *de minimis* and that the extent of his injuries, which included minor bruises and swelling of his face, mouth, and lip as well as loosened teeth and a cracked partial dental plate provided no basis for dismissal). The force used by the defendants was not anything more than *de minimis*, and summary judgment could therefore be granted on this basis alone.

Even if this were not so and the defendants' conduct violated the Eighth Amendment, the defendants are certainly entitled to summary judgment on qualified immunity grounds. The doctrine of qualified immunity protects government officials from liability for civil damages insofar as "their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). Officials "are entitled to qualified immunity under § 1983 unless (1) they violated a federal statutory or constitutional right, and (2) the unlawfulness of their conduct was 'clearly established at the time.'" *District of Columbia v. Wesby*, 138 S. Ct. 577, 589 (2018) (quoting *Reichle v. Howards*, 566 U.S. 658, 664 (2012)). A right is "clearly established" if it has a "sufficiently clear foundation in then-existing precedent," meaning it is "settled law" as "dictated by 'controlling authority' or 'a robust "consensus of cases of persuasive authority."'" *Id.* at 589–90 (first quoting *Hunter v. Bryant*, 502 U.S. 224, 228 (1991) (per curiam); then quoting *Aschroft v. al–Kidd*, 563 U.S. 731, 741–42 (2011)). This demanding standard extends qualified immunity to "all but the plainly incompetent or those who knowingly violate the law." *White v. Pauly*, 137 S. Ct. 548, 551 (2017) (quoting *Mullenix v.*

*Luna*, 136 S. Ct. 305, 308 (2015) (per curiam)). "Although qualified immunity is an affirmative defense, the plaintiff has the burden of defeating it once the defendants raise it." *Archer v. Chisholm*, 870 F.3d 603, 613 (7th Cir. 2017). The defendants assert they are entitled to qualified immunity because the law was not clearly established to place them on notice that using trained wall stabilization techniques on a non-compliant and disruptive inmate during a hands-on escort to the segregation unit was unconstitutional.

Summary judgment is proper here because Wilson has not identified, and the court has not found, a controlling case or robust collection of persuasive authority analogous to the set of facts presented here that clearly establishes that the defendants' conduct violated the Eighth Amendment. Wilson asserts that the Eighth Amendment's prohibition of the unnecessary and wanton infliction of pain as described in *Hudson v. McMillian*, 503 U.S. 1 (1992), prohibited the defendants from stabilizing him against the wall. The Supreme Court has "repeatedly stressed that courts must not 'define clearly established law at a high level of generality, since doing so avoids the crucial question whether the official acted reasonably in the particular circumstances that he or she faced." *Wesby*, 138 S. Ct. at 590 (quoting *Plumhoff v. Rickard*, 134 S. Ct. 2012, 2023 (2014)); *see also City & Cty. of San Francisco v. Sheehan*, 135 S. Ct. 1765, 1774 (2015) ("An officer cannot be said to have violated a clearly established right unless the right's contours were sufficiently definite that any reasonable official in his shoes would have understood that he was violating it, meaning that existing precedent placed the statutory or constitutional question beyond debate."). While *Hudson* defines the contours of excessive force generally, it does not define Wilson's Eighth Amendment right with the specificity required by the Supreme Court.

Wilson also cites *Hill v. Shelander*, 992 F.2d 714 (7th Cir. 1993), and *Martin v. Board of County Commissioners of County of Pueblo*, 909 F.2d 402 (10th Cir. 1990), to suggest that the defendants would have understood that their conduct violated his constitutional rights, but those cases are distinguishable on their facts. *See White*, 137 S. Ct. at 552 (noting that "the clearly established law must be 'particularized' to the facts of the case"). In *Hill*, for instance, after the inmate objected to sharing his cell with another inmate, an officer grabbed the inmate's hair, pulled him out of his cell, slammed his head against the metal bars of the cell door, struck him twice in the face with his fist, and kicked the inmate in the groin. 992 F.3d at 715. And *Martin* involved a pretrial detainee's deliberate indifference claim against law enforcement officers that coerced the detainee, who was at a hospital for treatment of a broken neck, to walk, inadequately clothed, to a van, climb in the van, ride to the jail, and sit at the jail for one hour without medical attention. 909 F.2d at 403–04. These cases are not factually similar to the instant case. The defendants in this case utilized a stabilization technique to secure Wilson to a wall after he threatened officers; continued to be non-compliant, disruptive, and aggressive; and ignored their directives. In sum, no clearly established law involving sufficiently similar circumstances put the defendants on notice that their conduct violated Wilson's constitutional rights. Pettis, Miller, Ireland, Lollis, Tyra, and Sivilotti are therefore entitled to qualified immunity, and Wilson's claims against them will be dismissed.

## CONCLUSION

Based on the foregoing, Pettis, Miller, Ireland, Lollis, Tyra, and Sivilotti's motion for partial summary judgment (Dkt. No. 21) is **GRANTED**. Wilson's claims against Defendants Whyketha Pettis, John L. Miller, Jerome Ireland, Ronald Lollis, David Tyra, and Daniel Sivilotti are dismissed. All that remains is Wilson's Eighth Amendment claim against Defendant Meyer arising out of the

strip search. The Clerk is directed to set this matter on the court's calendar for a telephone scheduling conference.

**SO ORDERED** this  18th  day of April, 2019.

s/ William C. Griesbach  
William C. Griesbach, Chief Judge  
United States District Court